NORTHERN STATES POWER COMPANY, Plaintiff-Appellant,

v.

NATIONAL GAS COMPANY, INC., Defendant-Respondent.

Court of Appeals

*No. 99–1486. Submitted on briefs November 18, 1999.—Decided December 30, 1999.*

## 2000 WI App 30

(Also reported in 606 N.W.2d 613.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joseph R. Mirr* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Thomas A. Lockyear* of *Lockyear Law Offices, S.C.* of Madison.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J. Northern States Power Company (NSP) appeals the summary judgment dismissing its complaint against National Gas Company, Inc. The complaint alleges that portions of the agreement between National Gas and the owner of a mobile home park in the Town of Shelby, La Crosse County, are void because they interfere with NSP's obligation to provide service to the public and are therefore against public policy.[1] Under that agreement, the owner of the

---

[1] The order for judgment granting summary judgment to National Gas and dismissing NSP's complaint also dismissed National Gas's counterclaim against NSP for tortious interference with contract.

542

mobile home park agreed to require the residents of the park to purchase their propane and natural gas from National Gas at its customary rates. The trial court concluded it was not clear that the public policy of the State of Wisconsin obligated NSP to provide service to persons who are already receiving satisfactory service. The court therefore decided it should not declare the contract void as against public policy. We agree with the trial court that the contract does not violate a clear statement of public policy regarding NSP's duties as a public utility. We therefore affirm.

## BACKGROUND

¶ 2. The relevant facts are not disputed. NSP is a Wisconsin public utility that provides electricity and natural gas to the public, subject to rules adopted by the Wisconsin Public Service Commission (PSC). In February 1960, the Town of Shelby, by municipal ordinance, granted NSP a franchise for the furnishing and sale of natural gas in the town. In March 1960, by order of the PSC, NSP was granted authority to provide natural gas service in the Town of Shelby and other municipalities.

¶ 3. National Gas is a Wisconsin corporation engaged in the distribution and sale of propane gas, and is not a public utility. In May 1972, it entered into an agreement with the Roesler family which granted National Gas the perpetual and exclusive right to supply natural and propane gas[2] to the tenants of a mobile home park owned by the Roeslers, now known as

---

[2] Although the agreement provides National Gas with the exclusive right to supply "either natural or propane gas," National Gas has provided only propane fuel.

Pineview Mobile Home Park.[3] The agreement also obligated the Roeslers to incorporate into the rules for tenants one which requires those tenants using either natural or propane gas to purchase that gas from National Gas at its customary rates. National Gas installed non-portable propane storage facilities, underground piping and metering facilities to provide propane gas service to the residents. The agreement has remained continuously in effect, and National Gas presently provides propane fuel to approximately one hundred current tenants.

¶ 4. In early 1997 several tenants requested that NSP provide natural gas service to them. In anticipation of providing those services, NSP obtained an easement from the owner to allow NSP to install underground natural gas pipes and other facilities in the park. At some point NSP became aware of the agreement with National Gas and commenced this action, seeking a determination that the portions of the agreement described above are void because they interfere with NSP's obligation to provide service to the public and are therefore against public policy.

¶ 5. NSP moved for summary judgment. The trial court denied that motion but granted summary judgment in favor of National Gas Company. The court concluded that the agreement did not clearly violate the public policy of the State of Wisconsin because there was apparent authority under the administrative code for a mobile home park owner to restrict the tenants' choice of vendors of utility services, and there is no case law declaring the public policy applicable in circumstances similar to this case.

---

[3] The agreement was with Kenneth A. Roesler, Irene A. Roesler, Richard L. Roesler and Jacqueline M. Roesler. At the present time Richard L. Roesler is the sole owner of the park.

## DISCUSSION

¶ 6. On appeal NSP renews the argument it presented to the trial court. It contends the provision of the agreement granting National Gas the exclusive and perpetual right to furnish park residents with propane or natural gas is void as against public policy because it prevents NSP from fulfilling its obligations as a public utility.

¶ 7. In reviewing the trial court's grant of summary judgment, we apply the same standard of review as the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994). Summary judgment is proper if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Section 802.08(2), STATS. Since the facts are undisputed, the interpretation of the contract presents a question of law, *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 80, 557 N.W.2d 61 (1996), as does the application of public policy considerations to a contract. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 654, 517 N.W.2d 432, 443 (1994). We review questions of law de novo, while benefiting from the trial court's analysis. *Lomax v. Fiedler*, 204 Wis. 2d 196, 206, 554 N.W.2d 841, 844–45 (Ct. App. 1996).

¶ 8. The general rule is that parties are free to contract as they see fit; however, contracts that impose obligations that are contrary to the public policy of the state are unenforceable. *State ex rel. Journal / Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 710–11, 456 N.W.2d 359, 362 (1990). A contract may be held unenforceable on grounds of public policy only in cases free from doubt. *Continental Ins. Co. v. Daily Express, Inc.* 68 Wis. 2d 581, 589, 229 N.W.2d 617, 621 (1975). Public policy may be expressed by statute, *see Pedrick v. First Nat'l*

*Bank*, 267 Wis. 436, 438–39, 66 N.W.2d 154, 155 (1954); by administrative regulation, *see M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 507, 536 N.W.2d 175, 186 (Ct. App. 1995); or by the court's expression of the policy of the common law. *See Hawkins Realty Co. v. Hawkins State Bank*, 205 Wis. 406, 417, 236 N.W. 657, 662 (1931).

¶ 9. As a source of its duty to provide services, NSP begins with § 196.03(1), STATS., which states:

> Subject to s. 196.63, a public utility shall furnish reasonably adequate service and facilities. The charge made by any public utility for any heat, light, water, telecommunications service or power produced, transmitted, delivered or furnished or for any service rendered or to be rendered in connection therewith shall be reasonable and just and every unjust or unreasonable charge for such service is prohibited and declared unlawful.

¶ 10. NSP then refers us to a number of cases decided under ch. 196, STATS., that have addressed whether a public utility must extend service to a person requesting it. In the first of this line of cases, *Northern States Power Co. v. Public Serv. Comm'n*, 246 Wis. 215, 16 N.W.2d 790 (1944), NSP sought judicial review of a PSC order that it furnish heating service to a resident who had requested service and been denied by NSP. The supreme court upheld the PSC's order rejecting NSP's argument that the residence was outside of its area of undertaking and would be unreasonably expensive to service. *See id.* at 228, 16 N.W. at 795. In reaching this conclusion the court stated: "By the enactment of the public utility act (ch. 196, STATS.) the legislature has determined that the public interest requires that public utilities shall, within their under-

taking, furnish their service to all who reasonably require the same." *Id.*

¶ 11. This statement from *Northern States* has been relied upon to define a public utility's duty in subsequent cases in which a public utility sought judicial review of PSC orders that it provide services to persons who did not have service and for whom the utility had refused to provide service on the ground they were located outside its area of undertaking. *See City of Milwaukee v. Public Serv. Comm'n*, 268 Wis. 116, 120, 66 N.W.2d 716, 718 (1954); *Town of Beloit v. Public Serv. Comm'n*, 34 Wis. 2d 145, 149, 148 N.W.2d 661, 663 (1967). The *Northern States* statement has also been relied upon in cases in which individuals already had telephone service, but in their view it was unsatisfactory because they had to use a foreign exchange in order to call the commercial and social centers nearest them. *See Lodi Tel. Co. v. Public Serv. Comm'n*, 262 Wis. 416, 420–22, 55 N.W.2d. 379, 381–82 (1952), and *Weyauwega Tel. Co. v. Public Serv. Comm'n*, 14 Wis. 2d 536, 541–42, 111 N.W.2d 559, 562 (1961) (both affirming PSC orders that reasonably adequate service to public requires extension of service by a second telephone company in the area of that company's undertaking, even though this will result in a duplication of lines).

¶ 12. We agree with the trial court and with National Gas that none of these cases establish a public policy that is applicable in the context of this case—where there is no contention that the mobile home tenants do not have service, or are receiving inadequate service, or are being charged unreasonable rates for the service.

¶ 13. NSP also relies on the common law existing prior to the enactment of ch. 196, STATS.[4] In *Krom v. Antigo Gas Co.*, 154 Wis. 528, 533, 140 N.W. 41, 44 (1913), the court explained:

> [The predecessor to § 196.03(1)] is plainly declaratory of the common law and adds nothing to the obligations of persons or corporations who, having received legislative authority to carry on the business of a public utility, undertake to do so.
>
> Such persons and corporations have always been under a legal duty to furnish reasonably adequate service at reasonable rates and without discrimination to all who are entitled to apply for service. *Shepard v. Milwaukee G.L. Co.*, 6 Wis. [526] [*]539 [(1858)]; *Munn v. Illinois*, 94 U.S. 113 [(1876)]; *Kennebec W. Dist. v. Waterville*, 97 Me. 185, 54 Atl. 6, 60 L.R.A. 856 [(1902)]; *Madison v. Madison G. & E. Co.*, 129 Wis. 249 (108 N.W. 65) [(1906)], and cases cited in that case on page 265.

The cases the *Krom* court cites establish that at common law a state or local government could regulate, for the public good, private companies that provided services under exclusive franchises, or otherwise had virtual monopolies. More specifically, gas companies with exclusive franchises from a city could be required to provide service to everyone in the city on reasonable terms, *see Shepard*, 6 Wis. at 534–35, [*546–47], and at reasonable rates. *Madison*, 129 Wis. at 265, 108 N.W. at 68.[5]

---

[4] The Wisconsin Public Utility Law was originally enacted as §§ 1797m—1 to 1797m—108 by Laws of 1907; ch. 499. The predecessor to § 196.03(1), STATS., was § 1797m—3, STATS., 1911.

[5] The issues actually decided by the court in *Krom v. Antigo Gas Co.*, 154 Wis. 528, 536–37, 140 N.W. 41, 45 (1913), are not

¶ 14. As additional authority for the duty a public utility has at common law, NSP cites to 64 AM. JUR. 2D *Public Utilities* § 16 (1972) (footnotes omitted, emphasis added by NSP):

> The primary duty of a public utility is to serve on reasonable terms all those who desire the service it renders; and it may not choose to serve only the portion of the territory covered by its franchise which is presently profitable for it to serve. Upon the dedication of a public utility to a public use and in return for the grant to it of a public franchise, the public utility is under a legal obligation to render adequate and reasonably efficient service impartially, without unjust discrimination, and at reasonable rates, *to all members of the public to whom its public use and scope of operation extend* who apply for such service and comply with the reasonable rules and regulations of the public utility. *This obligation is one implied at common law and need not be expressed by statute or contract, or in the charter of the public utility.* The fact that the franchises granted to the company do not expressly impose upon it the obligation to serve all persons in the locality does not relieve the company, nor does the fact that the person applying for gas is already supplied with gas by another company.

We have examined the cases cited in support of the emphasized sections, and their holdings are similar to those in the cases cited in *Krom*. They address either the authority of government to regulate a utility, *see, e.g., Pinney & Boyle Co. v. Los Angeles Gas & Elec.*

relevant to this appeal: whether another section of the statute on the liability of public utilities was intended to enlarge upon the limits of liability as defined in a particular court case decided before the statute was passed, and the proper interpretation of that liability section.

*Corp.*, 141 P. 620 (Cal. 1914), or the obligation of a utility that is considered a public utility to provide service at reasonable rates and on reasonable terms within the area of its grant or franchise to persons who do not have the service. *See, e.g., State ex rel. Woodhaven Gaslight Co. v. Public Serv. Comm'n*, 269 U.S. 244 (1925).

¶ 15. We have also examined the one case cited in support of the last assertion in the AM. JUR. quotation—"the fact that the person applying for gas is already supplied with gas by another" "does not relieve the company" of its duty to provide service. In that case, *Portland Natural Gas & Oil Co. v. State ex rel. Keen*, 34 N.E. 818 (Ind. 1893), the individual requesting gas from the utility company was already being furnished gas by another company. The court rejected the argument that this prevented the utility company from furnishing gas without interfering with the property of the other company. Even if it appeared otherwise, the court stated,

> we would not be disposed to place a construction upon that act which would give a gas company furnishing unsatisfactory service, or charging an unsatisfactory price for its service, the perpetual right to furnish gas to a particular building because it had been permitted to attach its appliances for the purpose of furnishing gas.

*Id.* at 819.

¶ 16. To the extent *Portland Natural Gas* may be considered to express the policy of the common law with respect to the duties of a public utility, it is concerned with situations in which the person requesting service does not have satisfactory service at a reasonable rate. Therefore, like the Wisconsin cases NSP relies

on, it does not impose on a public utility a duty to provide service to one who already has service and is not claiming that service is unsatisfactory or the rate unreasonable.

¶ 17. Of course, the legislature has the authority to expand the duty of public utilities beyond that existing at common law. However, the general requirement in § 196.03(1), STATS., that a public utility "shall furnish reasonably adequate service and facilities" does not indicate that NSP has a duty to furnish services to the park tenants in the circumstances of this case. And, while the PSC has the authority to implement rules more specifically defining the duties of public utilities, *see* §§ 196.02(1) and 227.11(2), STATS., we have found no regulation addressing either the duty of a public utility to provide services in circumstances similar to those here, or the right of consumers to have service from a public utility, regulated by the PSC, as opposed to a non-public utility that is not so regulated. For example, WIS. ADM. CODE § PSC 134, Standards for Gas Service, states that it implements § 196.03, and other sections of ch. 196. *See* WIS. ADM. CODE § PSC 134.01(2). This chapter addresses the duties of a public utility in terms of the quality of its services, standards and procedures for disconnection and reconnection of services, rates and billing, but not in terms that might bear on this case.

¶ 18. In addition to pointing out the absence in the case law and ch. 196, STATS., of a declaration of the public policy NSP asserts, National Gas contends that WIS. ADM. CODE § ATCP 125.04(2) and (3) expressly allow owners of mobile home parks to enter into agreements such as the one it has with Roesler. These sections provide:

(2) RESTRICTIONS ON CHOICE OF VENDORS No operator ["person engaged in the business of renting sites in a mobile home park," WIS. ADM. CODE § ATCP 125.01(3)] may restrict the choice of vendors from whom a tenant may purchase goods or services. This subsection does not apply to:

(a) Utility services, subject to sub. (3).

. . . .

(3) CHARGES FOR UTILITY SERVICES. (a) Charges for a utility service provided through the operator's facilities, if not included in the rent, shall be based on the amount of the utility service used by tenants. . . . Charges, or the method of computing charges for utility services provided through the operator's facilities shall be set forth in the rental agreement under s. ATCP 125.03(1)(b).

. . . .

(c) Charges for utility services provided through the operator's facilities, if based on amounts used, shall be periodically invoiced in writing to tenants. Invoices shall specify both the charge and the amount of the utility service used.

(d) Charges for utility services provided through the operator's facilities, if not included in the rent, shall be competitive with retail prices charged for the same or equivalent services by public utilities or other local sources. If a utility service is provided directly to tenants by a public utility or other outside source, no additional charge may be assessed for the service by the operator.

"Utility service" includes both natural gas and "liquified petroleum gas other than liquified petroleum gas in portable containers." WIS. ADM. CODE § ATCP 125.01(10)(a) and (b).

¶ 19. NSP disputes that this administrative rule is a valid expression of public policy for two reasons. First, NSP claims, it conflicts with § 196.03, STATS.,

and the cases we have discussed above. We do not agree. As we have already stated, neither the statutory provision nor the case law provides a clear statement of a public policy requiring a public utility to provide service to everyone requesting it in the utility's area of undertaking, even if the person already has service that is not claimed to be unsatisfactory or provided at unreasonable rates; nor do they express a public policy of allowing persons to choose to have a public utility, rather than a non-public utility, provide them with services.

¶ 20. Second, NSP claims that this rule is beyond the authority of the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP) because only the PSC is authorized by statute to regulate public utilities, and a rule that goes beyond the authority of the promulgating agency is not a good source for discerning public policy. We do not view this rule as outside the authority of the DATCP, because it is not aimed at the rights or obligations of public utilities, but rather the rights and obligations of mobile home park operators and tenants, which the DATCP has the statutory authority to regulate as a business or trade practice under § 100.20, STATS. Nevertheless, we recognize that the rule may have an impact on public utilities, and it certainly does affect the choice of utilities that tenants in mobile home parks have. Were this rule to conflict with a rule lawfully promulgated by the PSC, we would agree that the latter would be the more persuasive source of public policy pertinent to the duty of public utilities or to the rights of potential consumers with respect to public utilities. However, in the absence of such a PSC rule, we conclude we may consider the DATCP rule as a source of public policy. We do not see it as definitive, but it does support National Gas's posi-

tion that the public policy of Wisconsin does not entitle tenants of a mobile home park to choose to have their utility services provided by a public utility, rather than by a company such as National Gas.

¶ 21. We conclude, as did the trial court, there is not a clear expression of public policy in Wisconsin that public utilities have a duty to provide services to those who request it in their area of undertaking if those persons live in a mobile home park, are provided utility services by a vendor selected by the operator on terms consistent with the DATCP rule, and are not claiming the service is inadequate or the rates are unreasonable. We therefore decide that the agreement between National Gas and the Roeslers is not void as against such public policy.[6]

*By the Court.*—Judgment affirmed.

---

[6] NSP argues, for the first time in its reply brief, that the agreement is also against public policy because the perpetual nature of the contract is an unreasonable restraint on trade. We do not generally consider issues raised for the first time on appeal, *see County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171, 288 N.W.2d 129, 138–39 (1980), nor do we consider arguments made for the first time in a reply brief to which the respondent does not have the opportunity to respond. *See Schaeffer v. State Personnel Comm'n*, 150 Wis. 2d 132, 144, 441 N.W.2d 292, 297. We therefore do not address this argument.