FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 26

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FRANK M. HENSLEY and MARLYCE A. HANSEN, husband and wife, | No. 44473-9-II |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| HERITOR, INC.; NOELE TIFFANY and "JOHN DOE" TIFFANY; MILLER UTILITIES, LTD.; G. MILLER, "JANE DOE" MILLER; the marital community of G. MILLER and 'JANE DOE" MILLER; and R. UTILITIES CO., | |
| Respondents. | |

BJORGEN, A.C.J. — Frank Hensley and Marlyce Hansen appeal a trial court's dismissal

of their suit against two entities, Heritor Inc. and Miller Utilities Ltd., that own an interest in the

community water system serving lots they own, as well as against two corporate officers in those

entities.[1] Hensley and Hansen's suit alleged that Heritor had breached a duty to provide water service adequate for reasonable domestic needs and that this breach also constituted a violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court granted Heritor's motion for dismissal at the end of Hensley and Hansen's presentation of their case-in-chief. Because substantial evidence supports the trial court's findings of fact related to the dismissal, which in turn support its legal conclusion that dismissal is warranted under CR 41(b)(3), we affirm.

## FACTS

In 1996 Pioneer Western Investments Associates, a corporation of which Hensley was president and in which he and Hansen owned a half interest, loaned money secured by title to a number of lots in a development called Ripplewood. The borrower defaulted on the loan and, to avoid foreclosure, conveyed the lots by quitclaim deed to Pioneer Western in 1999.

Hensley and Hansen later purchased the remaining half of Pioneer Western. After doing so, Hensley assigned Pioneer Western's only asset, title to six lots in Ripplewood, to himself and Hansen by quitclaim deed.

Ripplewood's recorded plat contains a servitude stating that:

Seller agrees to install a water system upon sale of 50% of the lots, or within 2 years' time for the use of buyer and buyer agrees to use said water system when it is installed and approved by the Public Health Department of the State of Washington. Buyer agrees to pay to Seller promptly upon completion of his hookup a charge therefore not to exceed $85.00. From the time water is delivered

---

[1] We refer to the defendants collectively as Heritor unless necessary to identify a specific defendant. Hensley and Hansen's complaint alleged that Miller Utilities Ltd. (Miller Utilities) was the record owner of the lot containing the community water system's well and pump house and that Heritor Inc. "claim[ed] ownership of the water system." Clerk's Papers (CP) at 30, 32. While admitting that Heritor Inc. claimed an ownership interest in the water system and that Miller Utilities was the record owner of the relevant lot, the defendants denied that Miller Utilities was the owner-in-fact of the lot.

to Buyer's lot by said hookup, Buyer agrees to pay a monthly use charge based on the rates established by the Washington State Public Services Commission.

Clerk's Papers (CP) at 39.

Ripplewood's seller installed the water system required by the servitude in or before 1971, when the Washington State Department of Health (Department) approved it. The water system includes trunk lines that cover the entire development and the necessary meters and valves to enable each lot to connect. Nineteen of Ripplewood's lots connected to the system before the year 2000. The lots Hensley and Hansen now own were not among these; neither Hensley and Hansen nor their predecessors-in-interest ever requested connection.

In 2000 the Department changed the regulations governing Ripplewood's water system. Although the system operates legally under the new rules for its current number of connections, it must make capital improvements to increase capacity before it may add new connections. However, the required capital improvements are not all-or-nothing. Ripplewood's water utility may make improvements to add a limited number of connections, rather than having to make the necessary improvements to serve all of its lots before adding any new connections.

After the Department changed the regulations in 2000, Hensley and Hansen attempted to sell their lots, but failed to do so. Attributing this failure to the lack of water service to the lots, they filed suit against Heritor. The suit asserted two causes of action relevant to this appeal: (1) breach of the "duty to provide water service to meet reasonable domestic needs for the lots owned by the plaintiffs," and (2) violations of the CPA arising from the breach of the duty to provide water service.[2] CP at 33.

---

[2] Hensley and Hansen also alleged that Heritor had recorded a frivolous lien against their lots. They produced no evidence to support the allegation, the trial court dismissed it, and they do not claim on appeal that the trial court erred by doing so.

At trial, Hensley testified that the Department's changed regulations had resulted in a moratorium on new connections to Ripplewood's water system and that the lack of water service to his and Hansen's lots meant that any buyer could not get a building permit. Hensley opined that this lack of water service halved the value of each lot to approximately $5,000. Hensley also admitted that he had never requested water service from Ripplewood's utility.

Heritor moved for dismissal under CR 41(b)(3) at the end of Hensley and Hansen's case-in-chief. In doing so, it argued that Hensley and Hansen failed to show breach of any duty because they had never requested service or paid the necessary connection fees. They also contended that without any breach of the duty to provide water service, there was no unfair or deceptive act that would create a CPA violation. The trial court granted this motion after finding that

> 1. The Plaintiffs['] Second Amended Complaint relied upon a Declaration contained in the Plat of Ripplewood Tracts . . . regarding providing a water system for the Tracts.
> 2. A water system was installed and approved by the State Department of Public Health in[ ]1971. However Plaintiff testified that he does not want water to his six lots and has not requested to be hooked up to water. Since Plaintiffs have not hooked up as required by the Declaration,[] Plaintiffs['] claim that the Defendants have breached their duty to provide water service to meet reasonable domestic needs to Plaintiffs' lots cannot be sustained.
> . . . .
> 4. Plaintiffs[,] having failed to present evidence that the Defendants did not provide water service to Plaintiffs['] lots, have failed to support their claim that the Defendants are in violation of Chapter RCW 1986.

CP at 5.

Hensley and Hansen now appeal the dismissal of their claims.

4

## ANALYSIS

### I. Standard of Review

Under CR 41(b)(3),[3] in a bench trial the court "may grant a motion to dismiss at the close of the plaintiff's case either as a matter of law or a matter of fact." *Commonwealth Real Estate Servs. v. Padilla*, 149 Wn. App. 757, 762, 205 P.3d 937 (2009). The parties here agree that the trial court dismissed Hensley and Hansen's claims as a matter of fact. The trial court's entry of findings of fact "strongly suggests" that they are correct. *In re Dependency of Schermer*, 161 Wn.2d 927, 940, 169 P.3d 452 (2007). We therefore agree with the parties and, accordingly, review "whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law." *Padilla*, 149 Wn. App. at 762 (citing *Schermer*, 161 Wn.2d at 939-40).

### II. Duty to Provide Water Service

Hensley and Hansen contend that the trial court erred by finding that Heritor did not breach a duty to provide water service under either the plat agreement or state law, arguing that the evidence of the moratorium suffices to show the breach.[4] Heritor contends that the trial court properly found no breach, because Hensley and Hansen never requested water service. We agree with Heritor and affirm the trial court.

---

[3] CR 41(b)(3) states, in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

[4] The claim by Hensley and Hansen that the two corporate officers are individually liable is derivative of the breach of duty claim. Our affirmance of the trial court's conclusion that no breach of duty occurred is therefore determinative of these claims.

A.    Duty Under the Plat

Hensley and Hansen first contend that Heritor breached a duty to provide water service arising from the servitude in Ripplewood's recorded plat. Heritor contends that it owed no duty because Hensley and Hansen never requested water service. This issue turns on when the duty to provide water service imposed by the plat arose. If, as Hensley and Hansen claim, Ripplewood's utility had a duty to provide service as soon as the water system was installed and approved, Heritor is in breach because Hensley and Hansen cannot currently get service due to the moratorium. If, as Heritor claims, the duty arises upon a request for service, there was no breach because a condition precedent to breach, a request for service, never occurred here. Based on language in the plat, we hold that the duty to provide water service arose upon a request for service.

When interpreting a servitude, we attempt to determine the intent of the parties. *Riss v. Angel*, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). We give the servitude's words their ordinary meanings and construe the document in its entirety. *Riss*, 131 Wn.2d at 621.

Read in its entirety, the servitude did not impose an immediate duty on Ripplewood's utility to provide water to Ripplewood's lots. The first sentence of the servitude obligated Ripplewood's seller to build a water system and the buyers of lots in Ripplewood to use the system after its approval by the Department. The seller complied with this duty by installing the trunk lines and the meters and valves necessary for individual connections. The remainder of the servitude, however, distinguishes installation and approval of the system from the actual provision of service. The second sentence obligates buyers to pay connection fees after "hookup" rather than after installation and approval of the overall system. CP at 39. The third

sentence requires buyers to pay monthly service charges after "water is delivered," which, again, is distinguished from installation and approval. CP at 39.

By distinguishing installation and approval of the system from the connection of customers, the servitude conditions the utility's duty to provide service to individual lots on something besides the initial installation and approval of the system. Generally, that something else is a request for service by the customer. *N. States Power Co. v. Nat'l Gas Co.*, 232 Wis. 2d 541, 549, 606 N.W.2d 613 (1999) (quoting 64 AM.JUR.2D *Public Utilities* § 16 (1972)). The servitude here appears to implicitly follow this rule: water service begins at some time after installation and approval of the system, and customers connect by requesting to do so. *See N. States Power Co.*, 232 Wis. 2d at 549 (quoting 64 AM.JUR.2D *Public Utilities* § 16 (1972)).

Reading the servitude to require a request for service before any duty to provide service exists gives effect to the intent of the parties in agreeing to the servitude. The servitude is a mutual exchange of promises. Ripplewood's seller agreed to build a water system for use of the buyers of lots in Ripplewood. This gave Ripplewood's buyers access to water when they chose to develop their lots. Ripplewood's buyers promised to use the water system to the exclusion of others, but this duty to use the system is triggered only when the lot owners need water.[5] This interpretation of the servitude serves the seller's intent by allowing it to recoup money spent on the water system without saddling lot buyers with fees they do not want or need, which could decrease the marketability of Ripplewood's lots in contravention of the seller's purposes. This interpretation of the servitude also serves the buyers' intent by ensuring that lot owners have access to water service when they want to develop their lots.

---

[5] We note that a large majority of Ripplewood's lot owners have never requested water service.

A request for service was thus a condition precedent to any breach by Heritor, and the trial court found that Hensley and Hansen never made any request for service. *See Ross v. Hardin*, 64 Wn.2d 231, 236, 391 P.2d 526 (1964) (quoting 3A Corbin, *Contracts*, §§ 631, 632 (1960)). Substantial evidence supports this finding, since Hensley repeatedly testified to that fact. Without the occurrence of the condition precedent, Hensley and Hansen cannot not show a breach of duty by Heritor. *Partlow v. Mathews*, 43 Wn.2d 398, 406, 261 P.2d 394 (1953). The trial court's conclusion that Hensley and Hansen's suit should be dismissed thus flows directly from its finding that Heritor breached no duty.

Hensley and Hansen appear to contend they did not need to request service because doing would have been futile and "'the law does not require performance of futile acts.'" *Music v. United Ins. Co. of Am.*, 59 Wn.2d 765, 768-69, 370 P.2d 603 (1962) (quoting *Mass. Bonding & Ins. Co. v. Springsteen*, 1955 OK 142, 283 P.2d 819, 823 (1955)). However, the record contains evidence showing that a request for service would not be futile, because the connection fees for Hensley and Hansen's lots would pay for the capital improvements necessary to lift the moratorium to the extent needed to serve their lots. Evidence at trial also showed that utilities commonly use connection fees like the ones Hensley and Hansen would owe to pay for the costs of complying with changed regulations. We therefore reject Hensley and Hansen's argument that they were excused from requesting service because of the futility of doing so.

Absent a request for service from Hensley and Hansen, the servitude imposed no duty on Heritor to supply water to their lots. Without a duty to provide service, dismissal under CR 41(b)(3) was appropriate.

B.    Duty Under State Law

Hensley and Hansen next argue that Heritor owed a duty to provide water to their lots under state law. Hensley and Hansen claim that this duty arose from RCW 70.119A.060(1)(a), which provides that "[p]ublic water systems shall comply with all applicable federal, state, and local rules." One of Washington's rules, WAC 246-290-420(1), requires that "[a]ll public water systems shall provide an adequate quantity and quality of water in a reliable manner at all times consistent with the requirements of this chapter."[6]

Whether RCW 70.119A.060(1) and WAC 246-290-420(1) imposed a legal duty on Heritor to provide water to the subject lots is a question of law, *Crowe v. Gaston*, 134 Wn.2d 509, 515, 951 P.2d 1118 (1998), turning on our interpretation of those provisions. We interpret agency regulations just as we interpret statutes. *Cobra Roofing Servs. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004). We attempt to discern and give effect to the agency's intent. *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We discern that intent from the plain meaning imparted by the text of the regulation and any related regulations. *See Campbell & Gwinn*, 146 Wn.2d at 10-12. Where the provision remains susceptible to more than one reasonable interpretation after the plain meaning analysis, it is ambiguous and we turn to extrinsic evidence of the agency's intent. *See Campbell & Gwinn*, 146 Wn.2d at 12.

Chapter 246-290 WAC makes clear that any duty imposed on public water utilities by WAC 246-290-420(1) is owed only to consumers of the utility's services. WAC 246-290-001(1), which defines the purpose and scope of chapter 246-290 WAC, states that the chapter's

---

[6] Ripplewood's water system is a public water system. *See* WAC 246-290-020(1).

purpose is to "define basic regulatory requirements and to protect the health of *consumers* using public drinking water supplies." Other subsections of WAC 246-290-420 also focus on the term "consumer." *E.g.*, WAC 246-290-420(2), (5), (7), (8)(c). Similarly, the statutory purpose of the State's regulation of public water systems is to protect consumers' health. RCW 70.119.010.

Given the scope of the duty owed under WAC 246-290-420(1), and the trial court's finding that Hensley and Hansen had never requested water service, Heritor owed no duty to provide water service to Hensley and Hansen's lots. A consumer is "someone who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." BLACK'S LAW DICTIONARY at 382 (10th ed.). Hensley and Hansen never requested water service for their lots, and the record does not show that they are consuming water supplied to those lots. Therefore, they are not consumers of Heritor's water service. For that reason, they cannot claim the benefit of any duty under WAC 246-290-420(1) and therefore cannot claim a duty under RCW 70.119A.060(1).

In addition, Hensley and Hansen's position would conflict with the purpose of chapter 70.119 RCW and would raise contradictions in the regulations themselves. As noted, the purpose of the State's regulation of public water systems is to protect consumers' health. RCW 70.119.010. In service of that purpose, the State determined in 2000 that capital improvements must be made to the Ripplewood system to increase capacity before any new connections may be added. To now read another public water system regulation, WAC 246-290-420(1), to impose a duty on the Ripplewood utility to add new customers in violation of the 2000 order sacrifices both consistency and service of the public health.

For these reasons, state law does not impose a duty on Heritor to provide water service to Hensley and Hansen's lots under the present circumstances. The trial court's dismissal of Hensley and Hansen's suit flows from its findings and is consistent with governing law.[7]

## III. THE CPA

Hensley and Hansen contend also that Heritor's breach of its duty to provide water service to their lots constituted a violation of the CPA. Their CPA claim thus depends on a breach of duty by Heritor. Because we hold that Heritor did not breach any duty, the CPA claim must fail.

## IV. ATTORNEY FEES

Hensley and Hansen do not request attorney fees. Heritor seeks reasonable attorney fees, contending that Hensley's and Hansen's appeal is frivolous under RAP 18.9.

RAP 18.9 authorizes the award of reasonable attorney fees "as sanctions, terms, or compensatory damages when the opposing party files a frivolous appellate action." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is frivolous within the meaning of RAP 18.9

> if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal.

---

[7] Hensley and Hansen contend that dismissal was inappropriate because the trial court never addressed their statutory and rule-based duty argument. We may sustain the trial court's judgment on any grounds "established by the pleadings and supported by the proof." *Gross v. City of Lynnwood*, 90 Wn.2d 395, 401, 583 P.2d 1197 (1978). As shown above, the trial court's findings support the trial court's dismissal, since under them Heritor owed no duty to provide service to Hensley and Hansen's lots.

*Advocates for Responsible Dev.*, 170 Wn.2d at 580. We resolve any doubt about the frivolousness of an appeal in favor of the appellant so as to avoid chilling the exercise of the right to appeal. *Skinner v. Holgate*, 141 Wn. App. 840, 858, 173 P.3d 300 (2007).

Here, there is no authority on point that would reduce Hensley and Hansen's argument to the frivolous, and a person could read the plat agreement in the way they advocate. We hold that the appeal is not frivolous and decline to award attorney fees.

CONCLUSION

We affirm the trial court's dismissal of Hensley and Hansen's complaint.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.