COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1980-CR**

Cir. Ct. No. 2019CF273

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

HELVI NOE QUINONEZ MALDONADO,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Calumet County: DANIEL J. BOROWSKI and CAREY J. REED, Judges. *Affirmed*.

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Helvi Noe Quinonez Maldonado was convicted by a jury of multiple offenses stemming from his sexual involvement with his then-16-year-old cousin, Ana.[1] He appeals from the judgment of conviction and the circuit court order denying his motion for postconviction relief.[2] Quinonez Maldonado argues that he was deprived of a fair trial based both on the State's presentation of evidence regarding Ana's status as a virgin when Quinonez Maldonado first had intercourse with her and its purported reliance on improper expert testimony. Quinonez Maldonado raises both challenges under the rubric of ineffective assistance of counsel and further asserts that, even if we conclude counsel was not ineffective, it was plain error for the court to admit the virginity evidence. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Quinonez Maldonado was charged with multiple offenses based on allegations involving Ana. Ana testified at trial. She told the jury that when she was a 16-year-old girl crossing the border into the U.S., she was apprehended by customs, separated from her uncle with whom she left Honduras, and placed in a refugee camp with other children. About two months later, Ana was released from federal custody to the care of Quinonez Maldonado, her mother's cousin, who was 27 years old at the time and was established in northeastern Wisconsin, having left Honduras before Ana and her uncle did.

---

[1] We use a pseudonym for the victim pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] The Honorable Daniel J. Borowski presided over the jury trial and sentencing hearing in this matter. The Honorable Carey J. Reed presided over Quinonez Maldonado's postconviction proceedings.

¶3 As a condition of Ana's release, Ana's mother, who was still in Honduras, signed a document granting Quinonez Maldonado power of attorney and guardianship over Ana. Ana and others reported that just a few days after Ana was placed in his care, Quinonez Maldonado had sexual intercourse with her. She described that the first time it happened, she was sleeping in her bedroom when Quinonez Maldonado entered and began touching her on her waist, breasts, and vulva. Ana told him no multiple times, insisting it was wrong because they are related. Quinonez Maldonado told Ana that it did not matter that they are cousins, so he continued. Ana said Quinonez Maldonado then took her clothes off and, against her protestations, put his penis inside her vagina and ejaculated inside her. It caused her pain and bleeding from her vagina.

¶4 Ana testified that she "felt trapped" by the situation with Quinonez Maldonado. She said that Quinonez Maldonado had intercourse with her multiple times against her will while she was in his care. Ana testified about text messages she received from Quinonez Maldonado. In one text, Quinonez Maldonado appears to admit to having sexual intercourse with Ana: "The worst part is that you'll have to keep seeing me[.] That will be your suffering[.] The good fortune that I was the first. That is an honor[.]" Ana understood that text to reference taking her virginity. Quinonez Maldonado also threatened Ana with deportation proceedings and made comments implying he would cause harm to her family in Honduras if she did not cooperate with his demands.

¶5 Ana's mother, several family friends who intervened to help Ana and her mother, and members of law enforcement and investigators provided evidence at trial that corroborated Ana's testimony.

¶6   Prior to the trial, the State gave notice that it intended to call an expert witness, Mariana Rodriguez, who was a staff person at a resource center for Hispanic women and had been working with migrants for over 20 years. The State's expert-witness notice, which was filed prior to trial, reads, in relevant part, as follows:

> Mrs. Rodriguez will testify about her training and experience working with Latino women who have been victims of sex or labor trafficking, including migrant women from Honduras. Mrs. Rodriguez will testify about cultural differences observed in Latin America and the United States of America, including the family hierarchy and expectations of women. Mrs. Rodriguez will also testify about frequent challenges for migrant individuals including geographic orientation, language barriers, immigration concerns, unaccompanied children, and the likelihood of exploitation as examples. Mrs. Rodriguez will also testify about unique dynamics of power and control over migrant individuals.

Rodriguez's trial testimony was consistent with the State's anticipated testimony, as set forth in the notice. Rodriguez also provided testimony both on direct and cross-examination regarding the process by which an immigrant might apply for a visa if they have been a victim of a crime.

¶7   Quinonez Maldonado also testified at trial. Though he admitted to the jury that he had sex with Ana "various times," he described his "sexual relationship" with Ana as consensual, "like any other couple, like boyfriend and girlfriend." Quinonez Maldonado denied ever having threatened Ana. In fact, he claimed he and Ana had no problems whatsoever until her mother and her mother's friends became involved in trying to get Ana's immigration papers from him. He told the jury that Ana's mother knew about the nature of his relationship with Ana, and her mother "always" told her then-27-year-old cousin that she had "no problem" with him having a romantic relationship with, or even marrying, her

16-year-old daughter. Ana's mother contradicted Quinonez Maldonado's account with her trial testimony.

¶8 As pertinent to Quinonez Maldonado's arguments on appeal, in its closing argument, the State asked the jurors to consider "who do you believe?" The State pointed to Rodriguez's testimony as helpful for the jury to "understand the people who" testified, to understand that traffickers are "manipulative," "controlling[,]" and "violent" and Hispanic men often have "entitlement and ownership … of women." It helped the jury understand that Ana, as a young, uneducated immigrant with no family around except for Quinonez Maldonado, was "alone and isolated." Thus, the State argued, the jury could "really see how this dynamic is ripe for the exploitation of someone who's come into this county in a vulnerable state." The State also noted the courage it must have taken for Ana to testify about a subject as embarrassing as "losing her virginity." Trial counsel did not object to any mentions of Ana's virginity at trial or in closing arguments.

¶9 During her closing argument, Quinonez Maldonado's trial counsel hammered on the defense theory that the relationship was consensual. She also repeatedly emphasized Rodriguez's testimony that the U.S. provides certain immigration benefits to victims and witnesses who cooperate with the authorities in prosecuting various crimes. In doing so, counsel stressed the strength of this as a potential motive for Ana and her mother to lie about Quinonez Maldonado's behavior.

¶10 After a three-day trial, the jury convicted Quinonez Maldonado of trafficking of a child, third-degree sexual assault, intimidation of a victim, and exposing genitals. The trial court imposed a sentence of 26 years of initial confinement followed by 21 years of extended supervision. Quinonez Maldonado

then filed a postconviction motion seeking a *Machner*[3] hearing. He alleged ineffective assistance of counsel with respect to trial counsel's performance involving the evidence of Ana's virginity and the expert witness. He further alleged that even if counsel was not ineffective, he is entitled to a new trial under the plain-error doctrine. The circuit court denied the motion. Quinonez Maldonado appeals.

¶11 We include additional facts as necessary to the discussion below.

## DISCUSSION

¶12 As noted, Quinonez Maldonado seeks a new trial, asserting ineffective assistance of counsel because trial counsel did not object to multiple references to Ana's virginity, which generally are barred by Wisconsin's rape-shield statute, WIS. STAT. § 972.11(2)(b) He further argues counsel did not adequately investigate or cross-examine the State's expert witness, Rodriguez, on cultural considerations.

¶13 To prove a claim of ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that his lawyer performed deficiently; and (2) that this deficient performance prejudiced him or her. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984). The test for deficient performance is whether "counsel's representation fell below an objective standard of reasonableness." ***Id.*** at 688. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694. "Such a

---

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

probability 'exists when there is a substantial, not just conceivable, likelihood of a different result.'" ***State v. Stroik***, 2022 WI App 11, ¶28, 401 Wis. 2d 150, 972 N.W.2d 640 (citation omitted). A claim of ineffective assistance of counsel fails if the defendant does not establish either prong of this test. ***Strickland***, 466 U.S. at 697.

## I. The Rape-Shield Evidence

### A. *Ineffective assistance of counsel*

¶14 Evidence of a victim's past sexual conduct, which includes a lack thereof, is generally prohibited under WIS. STAT. § 972.11. ***State v. Mulhern***, 2022 WI 42, ¶42, 402 Wis. 2d 64, 975 N.W.2d 209. However, § 972.11(2)(b)1. provides an exception for "[e]vidence of the complaining witness's past conduct with the defendant." Evidence falls under this exception and is admissible when: "(i) the proffered evidence relates to sexual activities between the complainant and the defendant; (ii) the evidence is material to a fact at issue; and (iii) the evidence of sexual contact with the complainant is of 'sufficient probative value to outweigh its inflammatory and prejudicial nature.'" ***State v. Jackson***, 216 Wis. 2d 646, 659, 575 N.W.2d 475 (1998) (citation omitted).

¶15 In this case, the State argues that the evidence did not violate the rape shield law because the evidence pertained to sexual intercourse between Quinonez Maldonado and Ana, it was material to a fact at issue, as sexual intercourse is an element the State must prove to establish third-degree sexual assault, *see* WIS. STAT. § 940.225(3)(a), and Quinonez Maldonado's admission to intercourse with Ana as set forth in a text message is more probative than prejudicial, particularly considering that Quinonez Maldonado's admission to sexual intercourse with Ana is indivisible from the fact that Ana was a virgin prior

to Quinonez Maldonado. In other words, there would be no way to redact the fact that Ana was a virgin from Quinonez Maldonado's admission to intercourse because of the way Quinonez Maldonado phrased the text language set forth above, stating that he "was the first" for Ana and "[t]hat is an honor."

¶16    Moreover, the State argues, trial counsel testified she strategically decided to use the text where Quinonez Maldonado told Ana it is an "honor" to be the first to have sex with Ana to support the defense's theory of the case—that Quinonez Maldonado and Ana were in love and their sexual relationship was consensual. According to the State, it was a reasonable strategy for trial counsel to decide to use what she believed was admissible evidence to support the defense's theory of the case. *See State v. Breitzman*, 2017 WI 100, ¶¶65, 73-78, 378 Wis. 2d 431, 904 N.W.2d.

¶17    In addition to her decision to use the virginity evidence to support Quinonez Maldonado's defense theory, trial counsel testified that she did not object to the evidence at trial because her objection would have been overruled anyway, as it was pertinent to an element of a charge against Quinonez Maldonado. Plus, counsel did not want to highlight the evidence by objecting during trial.[4]    These were reasonable strategic decisions, which is precisely what the circuit court here found.

---

[4] Quinonez Maldonado argues that he does not take issue with the State presenting the evidence, only with trial counsel's failure to object during the State's case. He argues that trial counsel should have moved to exclude the evidence because "[t]he defense, through [Quinonez Maldonado's] own testimony, had alternative evidence that they were in a romantic relationship that did not carry such an enormous risk of prejudice." However, as the State notes, neither the State nor the trial court, and likely not even the defense, knew during the presentation of the State's evidence whether Quinonez Maldonado would testify at trial, which potentially would have left the State without direct proof that sexual intercourse occurred if the other evidence had been excluded.

¶18    However, even if we assume, without deciding, that counsel performed deficiently by failing to object to testimony and argument about Ana's virginity, Quinonez Maldonado's ineffective assistance claim fails as to the rape-shield evidence because we conclude he cannot satisfy the prejudice prong of *Strickland*. More precisely, Quinonez Maldonado cannot show that there is a substantial likelihood he would not have been convicted had his trial counsel objected to the offending testimony and argument. This is fatal to his claim.

¶19    In short, we agree with the State's position that there was ample evidence for the jury to convict Quinonez Maldonado on the sexual offenses even without considering the evidence and argument to which he argues trial counsel should have objected. For example, Quinonez Maldonado readily admitted at trial that he repeatedly had sexual intercourse with his minor cousin while she was in his custody, though he argued it was consensual and he and Ana were in love. The disputed facts were established by Ana's testimony, her mother's testimony, and the testimony of her mother's friends, and supported by testimony from investigators and data analysts. Moreover, in addition to Quinonez Maldonado's own admissions at trial, the State presented text messages from Quinonez Maldonado after Ana had taken her immigration papers back from Quinonez Maldonado in which he attempted to manipulate Ana and her mother into staying silent about what happened. All of that evidence alone supports the guilty verdict without considering any of the unobjected-to evidence.

¶20    We conclude that Quinonez Maldonado cannot demonstrate that there is a substantial likelihood he would not have been convicted if his trial counsel had objected to the offending testimony and argument. Accordingly, the prejudice prong of *Strickland* is not met, and his ineffective assistance claim as to counsel's failure to object to the rape-shield evidence fails.

9

### B. *Plain error*

¶21     For the same reasons delineated in the discussion immediately above, we reject Quinonez Maldonado's argument that the trial court committed plain error in allowing the objectionable evidence and argument.  Under the plain error doctrine, WIS. STAT. § 901.03(4), a conviction may be vacated when an unpreserved error is fundamental, obvious, and substantial.  ***State v. Jorgensen***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77.  "We employ this doctrine sparingly."  ***State v. Bell***, 2018 WI 28, ¶12, 380 Wis. 2d 616, 909 N.W.2d 750.  "[T]he existence of plain error will turn on the facts of the particular case."  ***State v. Mayo***, 2007 WI 78, ¶29, 301 Wis. 2d 642, 734 N.W.2d 115.

¶22     No bright-line rule for what constitutes plain error exists.  ***Id.***  Nevertheless, "[t]he quantum of evidence properly admitted and the seriousness of the error involved are particularly important."  ***Jorgensen***, 310 Wis. 2d 138, ¶22.  "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless."  ***Id.***, ¶23.

¶23     As our analysis above demonstrates, even assuming, for the sake of argument, that Quinonez Maldonado has met his burden of showing that trial counsel's failures to object to the evidence and argument regarding Ana's virginity were "fundamental, obvious, and substantial" errors, we conclude the State has met its burden of establishing that any error was harmless.  *See id.*  "Erroneously admitted evidence may tip the scales in favor of reversal in a close case, even though the same evidence would be harmless in the context of a case demonstrating overwhelming evidence of guilt."  ***Id.***, ¶22 (citation omitted).  However, this is not one of those cases.  Under the circumstances and particular

facts of this case, we are convinced, beyond a reasonable doubt, that a rational jury would have convicted Quinonez Maldonado absent evidence or argument that Ana was a virgin. *See id.*, ¶23. He is not entitled to a new trial under the plain error doctrine.

## II. The Expert Testimony

¶24 We now turn to Quinonez Maldonado's final argument—that trial counsel was ineffective for her failures to investigate the State's expert witness, Rodriguez, and object to her testimony at trial. Quinonez Maldonado first argues that trial counsel was ineffective in "failing to investigate any aspect of [Mrs.] Rodriguez or her expected testimony[.]" "[A] defendant who alleges a failure to investigate on the part of his or her counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the case." *State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126. Accordingly, to demonstrate that counsel performed deficiently by failing to adequately investigate Rodriguez, Quinonez Maldonado must identify specific information regarding Rodriguez that was not apparent, or was untrue, from the State's summary of her expected testimony in the notice, her Curriculum Vitae (CV), or an internet investigation verifying her credentials. *See id.*

¶25 We conclude Quinonez Maldonado has not met his burden. His challenges regarding trial counsel's performance with respect to Rodriguez are broad and conclusory, rather than specific and supported. For example, he states that counsel "fail[ed] to investigate any aspect of" the expert or her anticipated trial testimony. However, as noted above, counsel testified that she had, indeed, done investigation into Rodriguez's credentials, CV, and likely testimony during

11

her pretrial preparation. Moreover, Quinonez Maldonado calls Rodriguez's practical knowledge into doubt by referencing her "purported work experience," but he does not allege, and cannot show, that the CV or her testimony on this issue were false. Similarly, Quinonez Maldonado fails to persuade this court that he would not have been convicted had the expert not testified. His failure-to-investigate argument fails for these reasons.

¶26 Quinonez Maldonado's failure-to-object argument regarding Rodriguez's trial testimony also fails. To explain, trial counsel testified at the *Machner* hearing as to the multiple reasons why she chose not to object to Rodriguez's trial testimony. First, trial counsel believed that an objection on the basis of Rodriguez's expertise would have failed, given Rodriguez's background, knowledge, and extensive professional experience, which counsel had reviewed, investigated, and confirmed via a pretrial internet search. In addition, trial counsel knew that someone with Rodriguez's background would give "*Know Your Rights* presentations" to educate immigrants on their rights, including the protections provided for certain crime victims. Counsel testified this testimony supported the defense's theory that Ana and her mother were lying about Ana being assaulted because they wanted to obtain favorable treatment in Ana's immigration case. Further, counsel did not believe any of Rodriguez's testimony rose to the level of impermissible vouching as Quinonez Maldonado now claims. Finally, counsel stated she did not object to what she views, even in hindsight, as harmless information because to do so might make it seem that Quinonez Maldonado was trying to conceal something.

¶27 "[C]ounsel's decisions in choosing a trial strategy are to be given great deference." *Breitzman*, 378 Wis. 2d 431, ¶38 (citation omitted). "If trial counsel testifies at the *Machner* hearing that the choice under attack was based on

a trial strategy, which the circuit court finds reasonable, it is 'virtually unassailable' and the ineffective assistance claim fails." ***State v. Sholar***, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). Such is the case here. We agree with the court's conclusion after the ***Machner*** hearing that trial counsel made reasonable, strategic decisions related to Rodriguez's trial testimony, there was no impermissible vouching by Rodriguez or the State, and, accordingly, Quinonez Maldonado cannot establish ineffective assistance of counsel.

## CONCLUSION

¶28 For the reasons set forth above, we conclude that trial counsel did not render ineffective assistance when she chose not to object to evidence and argument referencing Ana's virginity when Quinonez Maldonado first assaulted her. Nor did the trial court commit plain error by allowing the admission of that evidence. We further conclude that counsel was not ineffective in failing to conduct additional investigation into, and object to, the State's expert witness who testified about migrant customs.[5]

*By the Court.*—Judgment and order affirmed.

---

[5] To the extent that Quinonez Maldonado may have made any arguments that we do not fully address here, it is either because they were raised for the first time on appeal or in the reply brief, meaning they have been forfeited, *see **Northern States Power Co. v. National Gas Co.**,* 2000 WI App 30, ¶21 n.6, 232 Wis. 2d 541, 606 N.W.2d 613 (1999) (stating "[w]e do not generally consider issues raised for the first time on appeal … nor do we consider arguments made for the first time in a reply brief to which the respondent does not have the opportunity to respond." (citations omitted)), or they are insufficiently developed, *see **Techworks, LLC v. Wille**,* 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (stating "[W]e will not address arguments that are not developed.")

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.