COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP188**

STATE OF WISCONSIN

Cir. Ct. No.  2018CV2424

IN COURT OF APPEALS
DISTRICT IV

JESSICA MABIN,

  PLAINTIFF-APPELLANT,

  V.

ARTISAN AND TRUCKERS CASUALTY COMPANY,

  DEFENDANT-RESPONDENT,

TALGAT KONKARGAEV, DUET INSURANCE GROUP AND
NATIONAL LIABILITY & FIRE INSURANCE COMPANY,

  DEFENDANTS,

C A S TRANSPORT, INC. AND
NATIONAL CONTINENTAL INSURANCE COMPANY,

  DEFENDANTS-THIRD-PARTY PLAINTIFFS,

  V.

NOVA LINES, INC. AND
NATIONAL CONTINENTAL INSURANCE COMPANY,

  THIRD-PARTY DEFENDANTS.

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. § 809.23(3).**

¶1    PER CURIAM. A semi-trailer truck rear-ended Jessica Mabin's car. Mabin filed this personal injury action against the driver of the semi-truck and its owner. She also sued various insurance companies. This included a claim against her own insurer, Artisan and Truckers Casualty Company (Artisan), based on an uninsured motorist (UM) provision in her Artisan auto policy. The circuit court dismissed Mabin's UM claim against Artisan, concluding that, under the circumstances, the policy does not provide UM coverage. On appeal, Mabin argues that she is entitled to UM coverage because the semi-truck was an "uninsured vehicle," as defined in the policy. Based on our conclusions that there is no ambiguity in the pertinent language of the policy and that the semi-truck is not an "uninsured vehicle," we agree with Artisan that Mabin is not entitled to UM coverage.

¶2    Separately, Mabin appeals circuit court decisions to deny her motions for leave to amend her complaint to add new claims against Artisan based on theories of equitable estoppel and bad faith. We reject Mabin's arguments on these topics.

¶3    Accordingly, we affirm the challenged decisions of the circuit court and the dismissal of Mabin's action against Artisan.

**BACKGROUND**

¶4      The semi-truck rear-ended Mabin's car in September 2015 in Dane County.  Mabin filed this personal injury suit in the circuit court against the truck driver, who identified himself on the scene as Talgat Konkargaev, and CAS Transport, Inc. (CAS), the owner of the semi-truck.  Mabin also named as defendants three insurance companies.  She sued two of them—National Continental Insurance Company (National Continental) and National Liability & Fire Insurance Company (National Liability)—as alleged insurers of CAS or Konkargaev with potential exposure in this case.  Mabin also sued Artisan, as pertinent here based on an Artisan policy held by Mabin that provided for UM coverage.[1]

¶5      We skip over, as irrelevant to this appeal, procedural history regarding:  (1) a third-party complaint that CAS and National Continental filed against Nova Lines, Inc. (Nova) and; (2) decisions by the circuit court to grant motions for summary judgment in favor of CAS, National Continental, National Liability, and Nova, dismissing each from this action.  As established in a July 16, 2021 order of this court, the scope of this appeal is limited to the decisions of the circuit court granting Artisan's motion for summary judgment based on the absence of UM coverage, dismissing Artisan from the case, and denying Mabin's

---

[1] Mabin initially claimed that Artisan was an insurer of CAS, but she does not pursue that position in this appeal.  She discusses Artisan exclusively in its role as her own insurer, and she seeks exclusively to establish a right to UM coverage under her Artisan policy.

motions for leave to amend her complaint against Artisan based on theories of equitable estoppel and bad faith.[2]

¶6      Mabin moved for partial summary judgment and for leave to amend her complaint as to Artisan, and followed this up with a "revised memorandum" to the circuit court on these same issues.  Mabin made three arguments, each matching the arguments she now makes on appeal.  We now briefly summarize them.

¶7      First, Mabin argued that she is entitled to summary judgment in her favor because the semi-truck qualifies as "an uninsured motor vehicle as defined under" Mabin's Artisan policy.  Second, she argued that the circuit court should permit her to amend the complaint to add a claim of equitable estoppel against Artisan.  Her theory was that, due to Artisan's actions and inactions, it "is estopped from now claiming that there is no UM coverage" on the grounds that Artisan was then asserting.  Third, she argued that the court should permit her to amend the complaint to add a claim of bad faith against Artisan, "based upon its breach of its duty to [Mabin] to act in good faith."

¶8      Artisan moved for summary judgment seeking dismissal of all claims against it, advancing the same arguments it now makes on appeal.  In pertinent part Artisan argued that the UM provisions in the policy do not apply here because Mabin "was not involved in an accident with an 'uninsured motor vehicle.'"  Regarding Mabin's motions for leave to amend the complaint, Artisan

---

[2] In this appeal, Mabin challenges aspects of the circuit court's reasoning in dismissing National Continental on summary judgment, but this is improper argument under our prior order and accordingly we ignore those challenges.

contended that leave was not appropriate because any theories of estoppel or bad faith would fail on multiple grounds.

¶9     After considering briefing and oral arguments of the parties, the circuit court denied Mabin's motions for partial summary judgment and for leave to amend the complaint, and granted Artisan's motion for summary judgment, dismissing it from the case.  Mabin appeals.

## DISCUSSION

¶10     We first address the UM coverage issue and then turn to the circuit court's denial of Mabin's motions for leave to amend the complaint.

## I.  UM Coverage

### A.  Legal Standards

¶11     We independently review a grant of summary judgment using the same methodology as the circuit court.  *Pertzsch v. Upper Oconomowoc Lake Ass'n*, 2001 WI App 232, ¶7, 248 Wis. 2d 219, 635 N.W.2d 829.  Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2) (2019-20).[3]

¶12     The interpretation and application of statutes and regulations present issues of law that are generally subject to de novo review.  *Wisconsin Power & Light Co. v. PSC*, 2009 WI App 164, ¶18, 322 Wis.2d 501, 777 N.W.2d 106.

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶13    Interpretation of an insurance policy presents issues of law that we review independently from determinations of the circuit court. *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857.

¶14    Under Wisconsin's coverage methodology, a court first examines the terms in the policy addressing coverage to determine whether the alleged damages are covered. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65.  In this case, we end with that first step, because we determine that there is no grant of coverage and the parties do not discuss any exclusions or exceptions to exclusions in the Artisan policy. *See id.* (addressing the potential for second or third steps in the methodology).

¶15    Ambiguities are construed against the insurer, *see Folkman*, 264 Wis. 2d 617, ¶16, but here we discern no pertinent ambiguities.  "If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law." *Id.*, ¶13.

¶16    Courts must avoid determining that there is coverage for risks that the insurer did not contemplate or underwrite and for which it did not receive a premium. *American Family Mut. Ins. Co.*, 268 Wis. 2d 16, ¶23.

## B.  Additional Background

¶17    The following additional background is undisputed and pertinent to various arguments by the parties on the UM coverage issue.  Some of it is also pertinent to the two other issues addressed below.

¶18    At the time of the accident, the semi-truck had been leased by its owner, CAS, to Bright Trucking Company.  Bright, in turn, had entered into a "Broker-Carrier Transportation Agreement" with Nova, under which Bright

agreed to pick up and deliver a load of goods for a Nova customer using the semi-truck. Thus, the state of affairs when the semi-truck struck Mabin's car was that Bright was the interstate motor carrier that operated the semi-truck, which was on lease from CAS and carrying a load for a customer of Nova.

¶19    A state trooper responded to the accident scene, conducted an investigation that included taking photographs, and prepared a report that became available to the public. This evidence revealed that two signs were attached to the driver-side door of the semi-truck tractor: "LEASED TO NOVA LINES" and "BRIGHT TRUCKING US DOT #2783363 WOODRIDGE, IL."[4]

¶20    At the time of the accident, CAS and Nova each had liability insurance policies with National Continental and Bright had a policy with National Liability. In order to distinguish between the two separate policies that two different entities had with the same insurer, we refer to the CAS policy as National Continental-CAS policy and the Nova policy as the National Continental-Nova policy.

¶21    Mabin filed a liability claim with National Continental-CAS, which was denied. National Continental-CAS took the position that the driver "did not qualify as an insured" under the policy and that he "was not working for" CAS at

_____

[4] Regarding the "DOT number" on one of these signs, federal regulations governing commercial motor vehicles establish the required contents and modes of display for "identification numbers issued by" the Federal Motor Carrier Safety Administration, to be "preceded by the letters 'USDOT,'" including signage involving leased vehicles. *See* 49 C.F.R. § 390.21 (2020). All references to the Code of Federal Regulations are to the 2020 edition unless otherwise noted.

the time of the accident. In contrast, Mabin did not pursue claims based on the National Continental-Nova policy or Bright's National Liability policy.[5]

¶22 Also at the time of the accident, Mabin had an Artisan auto insurance policy that includes UM coverage with limits of $500,000 per accident. Part III, paragraph (a), of the policy provides in pertinent part:

> If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
>
> 1. sustained by an **insured person**;
>
> 2. caused by an accident; and
>
> 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

"Uninsured motor vehicle" is defined in paragraph (d) of Part III as follows:

> **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:
>
> a. to which no bodily injury liability bond or policy applies at the time of the accident and the owner or operator has not furnished proof of financial responsibility for the future;
>
> b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
>
> (i) denies coverage; or
>
> (ii) is or becomes insolvent.

---

[5] To clarify, Mabin initially sued National Liability based on a lapsed policy that National Liability had issued to CAS (entirely separate from the policy issued to Bright), but Mabin did not mention Bright in the operative complaint and she does not now assert that there is evidence that she ever pursued a claim based on Bright's National Liability policy.

c.  that is an unidentified motor vehicle involved in a hit-and-run accident with an **insured person**; or

d.  that is a **phantom motor vehicle**, if all of the following apply [listing three circumstances irrelevant to this appeal] ….

¶23  We now explain briefly how one aspect of the UM provision in Mabin's Artisan policy causes the parties to discuss federal financial responsibility statutes and regulations that govern interstate motor carriers. Central to some arguments is one phrase, emphasized in the following, from subparagraph a. of paragraph III(d) of the Artisan policy:  "'Uninsured motor vehicle' means a land motor vehicle … to which no bodily injury liability bond or policy applies at the time of the accident *and the owner or operator has not furnished proof of financial responsibility for the future*."  In broad strokes, interstate motor carriers must comply with federal law governing their financial responsibilities, and one permissible way for them to do this is to maintain an endorsement attached to an insurance policy.  *See* 49 C.F.R. § 387.7(d); *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 856 (9th Cir. 2000) ("Federal law applies to the operation and effect of" the specified endorsement.).  This endorsement is identified in federal law as an "Endorsement[] for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," and is referred to as an MCS-90 endorsement.  *See* 49 C.F.R. § 387.7(d).

¶24  In introducing the concept of the federal proof of financial responsibility law and the MCS-90 endorsement we make the following basic points.  As the parties here agree, an MCS-90 endorsement is not a policy of insurance that provides coverage for a particular vehicle or set of vehicles. Instead, it demonstrates the financial responsibility of the particular interstate motor carrier that is named in the insurance policy to which the endorsement is

attached. *See* 49 C.F.R. §§ 387.5, 387.15; *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 490 (4th Cir. 2003) ("'the primary purpose of the MCS-90 endorsement is to assure that injured members of the public are able to obtain judgment *from negligent authorized interstate carriers*,'" and it "creates a suretyship by the insurer to protect the public" (emphasis added; alteration and quoted source omitted)).

¶25   It is undisputed that an MCS-90 endorsement was attached to the National Continental-CAS policy, to the National Continental-Nova policy, and to Bright's National Liability policy.

¶26   As discussed in more detail below, Mabin contends that she is entitled to coverage under the UM provision of the Artisan policy because National Continental-CAS's denial of her claim caused the semi-truck to qualify as an "uninsured motor vehicle" under the Artisan policy.

### C. Analysis

¶27   We now explain why we reject Mabin's arguments that the semi-truck fits a definition of an "uninsured motor vehicle" contained in the UM provision of the Artisan policy, based strictly on our construction of the pertinent policy terms.[6]  Based on that conclusion, we affirm the circuit court on the UM coverage issue.

---

[6] Given our dispositive interpretation of pertinent policy terms on the UM coverage issue, we need not and do not reach what Artisan may intend to present as a broader argument for affirming the circuit court.  Artisan's broader argument might be that, based on federal or state statutes and regulations, no one in Mabin's position could possibly be entitled to UM coverage in any "trucking accident case that involves no less than three interstate motor carriers, each with a liability policy including an MCS-90 endorsement."  This includes the arguments made by each party about the significance and persuasive value of a California state court opinion.  *See **Global***
(continued)

¶28    Subparagraphs a.-d. of paragraph (d) of Part III of the Artisan policy are stated in the disjunctive, and therefore Mabin would establish that the semi-truck was an "uninsured vehicle" if she could show that any subparagraph applies. The primary dispute between the parties involves subparagraph b. Mabin adds limited argument based on subparagraph a., but she makes no argument at all based on subparagraphs c. or d., as quoted more completely *supra* in ¶22. Given Mabin's emphasis, we now address in turn subparagraphs b. and a., explaining why we conclude that neither provision applies here.

### 1.  Subparagraph b.

¶29    Subparagraph b. defines "[u]ninsured motor vehicle" using a two-part test. Each part must be met in order for a motor vehicle (here, the semi-truck) to be deemed "uninsured," because the parts are separated by a conjunctive "but." First, the vehicle must be one "to which a bodily injury liability bond or policy applies at the time of the accident." Second, the bonding or insuring company must either deny coverage to the person claiming UM coverage, or else the company must be "insolvent" or become so. (Neither party suggests that company insolvency is an issue in this case.)

¶30    We agree with Artisan that the following aspect of undisputed evidence is dispositive in its favor under a proper interpretation of the terms of

---

*Hawk Ins. Co. v. Century-National Ins. Co.*, 138 Cal.Rptr.3d 363 (Cal. Ct. App. 2012) (holding that the liability insurer of an interstate motor carrier that rear-ended a garbage truck was required to reimburse a UM insurer of the owner of the garbage truck for benefits paid by the UM insurer based on the carrier's MCS-90 endorsement). The facts in *Global Hawk* differ in numerous ways from the facts here and, at least so far as the current arguments of Artisan and Mabin suggest, the reasoning of the California court could be persuasive authority only regarding what Artisan may intend as the broader argument, which we do not reach.

subparagraph b., which are not ambiguous. It is undisputed that neither the semi-truck nor its driver at the time of the accident is listed on any insurance policy held by any of the three interstate motor carriers that have been identified as having potential liability in the accident. Mabin acknowledges this undisputed fact in her briefing on appeal: "CAS Transport, Inc., Nova Lines, Inc., and Bright Trucking Company, Inc. each had their own insurance polic[ies], but neither the driver nor the semi was listed on any of the policies." For this reason, Mabin cannot meet the first part of the two-part test in subparagraph b., because she lacks evidence that the semi-truck was one "to which a bodily injury liability bond or policy applies at the time of the accident."

¶31　It is true that Mabin was denied coverage by National Continental-CAS. She contends that this denial alone was sufficient to satisfy the subparagraph b. test. This is incorrect because, as Mabin concedes, the National Continental-CAS policy did not apply to the semi-truck or to the driver. As Artisan argues, the mere fact of this denial did not transform the semi-truck into an "uninsured vehicle" under the terms of subparagraph b.

¶32　Mabin argues that hers is a "basic," "very typical" UM claim, because she was an "insured" "involved in a motor vehicle accident, the at-fault driver's insurer denie[d] coverage for the accident, and the insured file[d] an uninsured motorist claim under its own policy." But it is a false premise that in this case "the at-fault driver's insurer denie[d] coverage." Mabin is referring to denial of coverage by National Continental-CAS. We have just explained why National Continental-CAS is not "the at-fault driver's insurer." Further, as noted above, Mabin did not pursue claims based on either the National Continental-Nova policy or on Bright's National Liability policy, and therefore there could have been no denial under either of those policies.

¶33    Mabin argues that "a reasonable person in her position would understand," based on the UM provision in the Artisan policy, "that the denial of liability coverage by [National Continental-CAS] triggered Ms. Mabin's uninsured motorist coverage under her policy."  Mabin is correct that one rule of insurance policy interpretation is that courts attempt to construe a given term so that it aligns with "the common and ordinary meaning it would have in the mind of a lay person." *See Cieslewicz v. Mutual Serv. Cas. Ins. Co.*, 84 Wis. 2d 91, 97-98, 267 N.W.2d 595 (1978).  But dispositive here is another rule that we have already noted:  absent ambiguity, a policy "is enforced as written, without resort to rules of construction or applicable principles of case law."  *Folkman*, 264 Wis. 2d 617, ¶13.  Further, Mabin falls to persuade us that a "lay person" applying "common and ordinary meaning[s]" to the pertinent terms in subparagraph b. would reach a different conclusion.  *Cieslewicz*, 84 Wis. 2d at 98.

¶34    At least at points in her briefing, Mabin seems to suggest an alternative argument that, even if the unambiguous terms of subparagraph b. dictate that there could be no UM coverage on the undisputed facts, the steps that she took (through counsel) to investigate the facts and consider the potential pursuit of claims in the wake of the accident should have been sufficient to trigger UM coverage because those were the actions of a reasonable insured.  At least this would seem to be the implication of her many assertions about what information was or was not readily available to her when she was making decisions about what claims to pursue.  For example, she asserts (without providing a record citation) that, at some unidentified time, she "did not know about the MCS-90 endorsement[s]" attached to the liability policies of Bright and Nova "and did not know about Nova Lines, Inc. or the Bright Trucking Company."  However, we do not discern in any of these references to information that she claims to have lacked

at various points a basis to conclude that UM coverage is available to her under subparagraph b., or under any other policy term referenced by the parties. Put differently, Mabin fails to identify evidence in the summary judgment materials related to the availability of information that could have any effect on the simple analysis we have just given explaining why, based on the undisputed facts and the unambiguous terms, subparagraph b. does not apply here to qualify the semi-truck as an "uninsured vehicle."

¶35    Mabin asserts that she should not have to "prove a negative" to qualify for UM coverage, but fails to explain this assertion in terms of policy language and we dismiss this as an undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate courts may decline to address undeveloped and inadequately briefed issues).

## 2. Subparagraph a.

¶36    For the most part, Mabin relies on subparagraph b. Indeed, she states in her opening brief that her "argument is focused on" subparagraph b. However, she may intend to add one or more arguments relying on subparagraph a., related to the federal financial responsibility law referenced above.[7] We now explain why we fail to discern a developed argument by Mabin that could render the semi-truck an "uninsured vehicle" under subparagraph a.

_____

[7] Mabin's subparagraph a. argument is arguably developed primarily in her reply brief, but we do not reject it on that basis. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶30 n.6, 305 Wis. 2d 658, 741 N.W.2d 256 (appellants are not entitled as of right to raise arguments for the first time in reply briefs).

¶37    "Uninsured motor vehicle" is defined in subparagraph a. by a different two-part test.  Each part of the subparagraph a. test must be met, because the parts are separated by the conjunctive "and."  First, the vehicle must be one "to which no bodily injury liability bond or policy applies at the time of the accident."  Second, the "owner or operator" of the vehicle "has not furnished proof of financial responsibility for the future."

¶38    Mabin makes references to the second part of the subparagraph a. test.  She asserts that the meaning of the phrase "has not furnished proof of financial responsibility for the future" means that *Artisan* was required to provide *Mabin* "with proof of financial responsibility for the future."  To this assertion she adds that "only a lawyer would think that [the second part of the subparagraph a. refers to] the filing of a Form BMC 91X Certificate of Liability Insurance with the Federal Highway Administration," meaning the filing of a form related to an MCS-90 endorsement.  We assume without deciding that Mabin raises potential questions about how, precisely, proof of financial responsibility is to be "furnished" under the terms of the UM policy.  However, until her reply brief, she does not develop a discernable argument based on the policy terms, as opposed to simply raising questions.  In the reply brief she may intend to indicate that her point is that the reference in subparagraph a. to "proof of financial responsibility for the future," is, in her words, "likely" a reference not to federal financial responsibility laws and the use of MCS-90 endorsements but instead to WIS. STAT. §§ 344.24 – 344.579.  This is a generic citation to the many sections of Chapter 344 ("Vehicles – Financial Responsibility"), including subchapter III, which addresses aspects of "Proof Of Financial Responsibility For the Future."

¶39    The purpose of Wisconsin's financial responsibility law is "to provide a method of compensating [third parties] for damages that may result from

15

future accidents caused by [the] negligence of [an] operator with a poor driving record." ***Cardinal v. Leader Nat. Ins. Co.***, 166 Wis. 2d 375, 390, 480 N.W.2d 1 (1992). Stated broadly, under this state law it is a condition of a license to operate a motor vehicle that the operator obtain a liability insurance policy for the protection of persons or property injured through operation of such vehicles. *See* ***Hechimovich v. Acuity***, 2014 WI App 14, ¶¶6-8, 352 Wis. 2d 513, 842 N.W.2d 493; WIS. STAT. § 344.33 (defining required "motor vehicle liability policy").

¶40 With that background, Mabin does not develop an argument that the second part of the subparagraph a. test has been satisfied here by proof that the "*owner or operator*" of the semi-truck "has not furnished proof of financial responsibility for the future" because the "owner or operator" did not comply with Wisconsin's financial responsibility law, as opposed to complying with the federal financial responsibility law. As would minimally be required for an argument along these or similar lines, she does not address in this context (or explain why she need not address) the uncontested facts that: (1) CAS, Bright, and Nova all had liability policies (which was, after all, a necessary precondition to having MCS-90 endorsements, which are attached to liability policies); (2) Mabin made no claims against either of the potentially responsible motor carriers Bright or Nova. And stepping back, Mabin does not support her assertion that, contrary to the unambiguous terms of the policy that the furnishing of proof is to be made by the "owner-operator," the furnishing of proof is to be made by Artisan to its insured.

## II. Motions For Leave To Amend

¶41    Mabin argues that the circuit court should have granted her motions for leave to amend her complaint to add claims against Artisan based on theories of equitable estoppel and bad faith.

¶42    As pertinent here, leave to amend in civil actions "shall be freely given at any stage of the action when justice so requires."  WIS. STAT. § 802.09(1). A circuit court's decision whether to allow an amendment to a complaint when the party does not have a right to amend under § 802.09(1) is a matter left to the discretion of the court.  *Mach v. Allison*, 2003 WI App 11, ¶20, 259 Wis. 2d 686, 656 N.W.2d 766.  We affirm a circuit court's discretionary decision if it applies a correct legal standard to the facts in a reasonable manner.  *See id.*  We conclude here that the circuit court did not erroneously exercise its discretion in determining that justice did not require amendment on either proposed theory.

### A.  Equitable Estoppel

¶43    We need not summarize the law governing the doctrine of equitable estoppel or Mabin's particular theory of equitable estoppel.  This is because we resolve this issue based on Mabin's concession to one of Artisan's arguments, applying settled Wisconsin case law, which is dispositive on this issue.  This case law establishes that a dispute over the existence of insurance coverage, which is all that is at issue here, cannot be resolved based on application of the doctrine of equitable estoppel against the purported insurer.  *See Maxwell v. Hartford Union High Sch. Dist.*, 2012 WI 58, ¶29, 341 Wis. 2d 238, 814 N.W.2d 484 ("'The general rule is well established that the doctrine of waiver or estoppel based upon the conduct or action of the insurer or its agent is not applicable to matters of coverage.'" (quoting *Shannon v. Shannon*, 150 Wis. 2d 434, 450-51, 442 N.W.2d

25 (1989)). "[E]stoppel can neither create an insurance contract where none exists, nor enlarge existing coverage." *Budget Rent-A-Car Sys., Inc. v. Shelby Ins. Grp.*, 197 Wis. 2d 663, 671, 541 N.W.2d 178 (Ct. App. 1995). Mabin concedes the point by failing to explain, after Artisan cites this case law, why this case law does not defeat her arguments. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession). Based on this concession, the circuit court could not have erroneously exercised its discretion on this issue.

### B. Bad Faith

¶44 A bad faith claim in the insurance context "is a tort separate and apart from a breach of contract [p]er se," giving rise to a separate claim for damages. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 686, 271 N.W.2d 368 (1978). A plaintiff must show: (1) the absence of a reasonable basis for denying policy benefits, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Brethorst v. Allstate Prop. and Cas. Ins. Co.*, 2011 WI 41, ¶26, 334 Wis. 2d 23, 798 N.W.2d 467. The first element is objective and the second is subjective. *Weiss v. United Fire and Cas. Co.*, 197 Wis. 2d 365, 377, 541 N.W.2d 753 (1995).

¶45 We conclude that the circuit court did not erroneously exercise its discretion on this issue for the following reason. As Artisan notes, in denying the motion for leave to amend to add a bad faith claim, the circuit court made the basic point that "there is no basis for the UM coverage here," and therefore a bad faith claim against Artisan would be "ill-founded in light of the fact [that] I have concluded there is no UM coverage." That is, the circuit court concluded that,

viewed in an objective manner, Mabin could not show the absence of a reasonable basis for denying policy benefits, given the fact that there is no basis for coverage. Mabin fails to develop an argument (and provides no argument at all on this issue in her reply brief) that could provide a sufficient basis for this court to reverse the circuit court's exercise of discretion on this issue, given our conclusion that the circuit court properly determined that there is no UM coverage under the policy.[8] Mabin fails to persuade us that the circuit court failed to apply correct legal standards to the facts in a reasonable manner.

## CONCLUSION

¶46    For all of these reasons, we affirm the circuit court rulings denying Mabin's request for a determination of UM coverage and her motions for leave to amend her complaint, and dismissing her action against Artisan.

*By the Court*.—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Before concluding, we note one fundamental shortcoming in Mabin's appellate briefing. In multiple spots, Mabin's counsel provides as record authority for a proposition a citation to a set of pages in the appellant's appendix, without providing either a specific page or a record citation. Both are required. *See Roy*, 305 Wis. 2d 658, ¶10 n.1. We remind counsel for Mabin that judges and staff of this high volume court, as well as opposing counsel, are entitled to expect briefing by an attorney that follows the basic rules of appellate procedure.